UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE SMERLING LITIGATION,

21 Civ. 2552 (JPC)

**DECLARATION OF MARIANNE CURTIS IN SUPPORT OF THE UNOPPOSED MOTION
TO APPROVE SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

MARIANNE CURTIS, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am a partner of the law firm of Berger Singerman LLP, counsel to James S.
Feltman who is the receiver (the "Receiver") appointed pursuant to that certain *Order Appointing
Receiver*, dated May 14, 2021 (Case No. 1:21-cv-05766-JPC, ECF No. 28) (the "Receivership
Order") and that certain *Order Granting Joint Motion to (I) Consolidate SVB Action and Citizens
Bank Action Into a Single Action, (II) Appoint James Feltman as Receiver in Consolidated Action,
and (III) Grant Unopposed Receivership Expansion Motion*, dated July 19, 2021 (Case No. 1:21-
cv-02552-JPC, ECF No. 98) (the "Receivership Consolidation/Expansion Order" and together
with the Receivership Order, collectively, the "Orders").  I respectfully submit this Declaration in
support of the unopposed motion (the "Unopposed Motion") of the Receiver requesting the Court
to enter an order, substantially in the form attached hereto as **Exhibit "1"** (i) approving the terms
of the *Settlement Agreement and Mutual Release* between the Receiver and World Class Auto
Repair, LLC ("WCA") and Jeffrey A. Kranitz ("Kranitz") (collectively, the "Debtors") attached
hereto as **Exhibit "2"**; and (ii) any further relief the Court deems just and proper.

DocuSign Envelope ID: 207AECA7-858A-447D-8B58-2E7671BBA343

2.      The Receiver is proceeding by motion, rather than filing an initial pre-motion letter, because of the time sensitivity of the relief sought and given that: (i) Citizens Bank, N.A. ("Citizens Bank") and Silicon Valley Bank ("SVB"), which are the plaintiffs in this consolidated action (the "Consolidated Action")[1], support the relief requested in the Unopposed Motion; (ii) defendant JES Global Capital GP III, LLC has failed to appear in either the SVB Action (defined herein) or the Consolidated Action; and (iii) defendants JES Global Capital II, L.P. and JES Global Capital GP II, LLC have failed to appear in the Citizens Bank Action (defined herein) or the Consolidated Action.

**Background:  The SVB Action and the Citizens Bank Action**

3.      SVB instituted the SVB Action in March 2021, alleging in its Complaint that Mr. Smerling ("Defendant Smerling") and JES Global Capital GP III, LLC (together, the "New York Defendants") had misappropriated nearly $95 million from SVB (of which approximately $80 million remains outstanding) through fraud and deceit.  (*See* Consolidated Action, ECF No. 1.)

4.      SVB thereafter obtained in the SVB Action orders of prejudgment attachment and preliminary injunctions with respect to assets of the New York Defendants.  (*See* Consolidated Action, ECF Nos. 19, 26, 31, 37, 67, and 80.)

5.      Following SVB's filing of its Complaint in the SVB Action, Citizens Bank initiated the Citizens Bank Action in the Florida Court and filed a similar complaint on May 5, 2021, against Defendant Smerling, JES Global Capital II, L.P., and JES Global Capital GP II, LLC (collectively,

---

[1]      The Receivership Consolidation/Expansion Order, among other things, consolidated the following two separate actions into this Consolidated Action: (i) *Citizens Bank, N.A.* v. *JES Global Capital II, L.P., JES Global Capital GP II, LLC and Elliot S. Smerling*, original case no. 21 Civ. 80815 (S.D. Fla.) initially filed in the District Court for the Southern District of Florida (the "Florida Court") and transferred to this Court by order of the Florida Court dated July 2, 2021 (post-transfer S.D.N.Y. case no. 1:21-cv-05766-JPC, ECF No. 66 (the "Citizens Bank Action")); and (ii) *Silicon Valley Bank* v. *JES Global Capital GP III, LLC; and Elliot S. Smerling*, case no 1:21-cv-02552-JPC (S.D.N.Y) (the "SVB Action") filed in this Court.  As the case number for the SVB Action and the Consolidated Action are the same, this Declaration refers to the "Consolidated Action" when referencing docket numbers for filings related to either the SVB Action or the Consolidated Action.

2

the "Florida Defendants"), seeking to recover approximately $54 million that Citizens Bank alleged the Florida Defendants improperly misappropriated from that bank.  (*See* Citizens Bank Action, ECF No. 1.)

6.     SVB in the SVB Action and Citizens Bank in the Citizens Bank Action obtained final judgments on consent against Defendant Smerling in the amounts of approximately $80 million and $56 million, respectively.  (*See* Consolidated Action, ECF No. 83; Citizens Bank Action, ECF No. 61.)

7.     Citizens Bank in the Citizens Bank Action also obtained a default judgment against the other Florida Defendants given their failure to appear in that action. (*See* Citizens Bank Action, ECF No. 58.)  Similarly, SVB in the SVB Action obtained a default Judgment against JES Global Capital GP III, LLC given its failure to appear in that action. (*See* Consolidated Action, ECF No. 150.)

**Defendant Smerling's Sentence in the Criminal Case**

8.     On May 13, 2022, this Court (Cote, J.) sentenced Defendant Smerling to 97 months in jail to be followed by three years' probation.  (*See Amended Judgment in a Criminal Case* dated June 1, 2022, Case No. S1 21-CR-00317-01 (DLC), ECF No. 55 (the "Amended Judgment").)

9.     The Amended Judgment contains other provisions, including but not limited to, the requirement that Defendant Smerling "cooperate with the Receiver to assist the Receiver to maximize the recovery of stolen funds".  (*See* Amended Judgment at p. 5.)

10.     On June 1, 2022, this Court (Cote, J.) entered an *Order of Restitution* requiring Defendant Smerling to pay restitution in the combined amount of $136,172,410.29, comprised of restitution to (i) SVB in the amount of $82,172,410.29 and (ii) Citizens Bank in an amount totaling $54,000,000.00.  (*See Order of Restitution*, Case No. S1 21-CR-00317-01 (DLC), ECF No. 54 (the "Order of Restitution").)

11512859-12

DocuSign Envelope ID: 207AECA7-858A-447D-9B59-2E76715BA343

**The Receiver and the Receivership**

11.    On May 14, 2021, the Florida Court entered the Receivership Order appointing Mr. Feltman as the Receiver for the estates of the Florida Defendants.  (*See* Citizens Bank Action, ECF No. 28.)  Mr. Feltman and his retained professionals have since been researching, locating and collecting assets associated with Defendant Smerling and various entities affiliated with him. (*See* Declaration of James Feltman with Respect to Original Inventory, Citizens Bank Action, ECF No. 65; Receiver's Quarterly Reports, Consolidation Action, ECF Nos. 130, 157, 185.)

12.    On July 19, 2021, this Court entered the Receivership Consolidation/Expansion Order: (i) appointing Mr. Feltman as the Receiver in the Consolidated Action, including as the receiver for the estates of the New York Defendants pursuant to the Receivership Order which was adopted as an order of this Court in the Consolidated Action, as modified by the Receivership Consolidation/Expansion Order; (ii) expanding the receivership to all of the assets that each of the 61 entities (collectively, the "Additional Entities") listed on Exhibit "A" of the Receivership Consolidation/Expansion Order owns, possesses, has a beneficial interest in, or controls directly or indirectly, as "Receivership Property" under the Receivership Order (collectively, the "Smerling Assets"); and (iii) appointing Mr. Feltman as the Receiver over the Smerling Assets.  (*See* Consolidated Action, ECF No. 98.)

**The Receiver Has Complied with 28 U.S.C. § 754**

13.    On July 22, 2021 (i.e., three days after this Court entered the Receivership Consolidation/Expansion Order), the Receiver properly commenced a 28 U.S.C. § 754 proceeding in the United States District Court for the Southern District of Florida.  *See* Florida Court, Case No. 9:21-mc-81274-AMC (the "28 U.S.C. § 754 Proceeding").

11512859-12

14.     In compliance with the requirements of 28 U.S.C. § 754, the Receiver initiated the

28 U.S.C. § 754 Proceeding by filing the following documents: (i) the Receivership Order; (ii) the

Receivership Consolidation/Expansion Order; (iii) the complaint filed by SVB in the SVB Action;

and (iv) the complaint filed by Citizens Bank in the Citizens Bank Action.  *See* Docket for 28

U.S.C. § 754 Proceeding at ECF No. 1.

**Broad Authority Has Been Granted to the Receiver**

15.     Pursuant to the Receivership Order, the Receiver has been granted broad and

extensive authority including the authority:

- to take complete custody, control, and possession of any and all Receivership Property (*See* Receivership Order, ¶ 5(b));

- To manage, control, operate, and maintain the Receivership Property and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court (*See* Receivership Order, ¶ 5(c));

- To use Receivership Property for the benefit of the Receivership Estate (*See* Receivership Order, ¶ 5(d));

- To take any action in relation to any Receivership Property which, prior to the entry of this Order, could have been taken by the Defendant Smerling (*See* Receivership Order, ¶ 5(e));

- To take such other action as may be approved by this Court (*See* Receivership Order, ¶ 5(k)); and

- To deposit all cash proceeds of Receivership Property, into the account being held by the Receiver (*See* Receivership Order, ¶ 19).

**The Loan Documents**

16.     Canes Twenty Two, LLC is an Additional Entity pursuant to the Receivership

Consolidation/Expansion Order.

17.     Through the entity Canes Twenty Two, LLC, Defendant Smerling loaned WCA—

which is owned by his childhood friend, Kranitz—$500,000.

18.     The transaction was memorialized through various documents as described below.

19.     The Senior Secured Balloon Promissory Note dated November 19, 2019 (the "Note") between Canes Twenty Two (the "Lender") and WCA was for $500,000 due in one final balloon payment on November 1, 2026. A true and correct copy of the Note is attached and incorporated herein as **Exhibit "3"**.

20.     In the Pledge Agreement dated April 21, 2020 (the "Pledge"), Kranitz pledged One Hundred (100) shares in WCA in connection with the Note. A true and copy of the Pledge is attached and incorporated herein as **Exhibit "4"**.

21.     The Side Letter Agreement dated April 21, 2020 (the "SLA") (together with the Note and the Pledge, the "Loan Documents") between the Lender on one side and WCA and Kranitz on the other, memorialized certain conditions and obligations pertaining to the Note and the Pledge. A true and correct copy of the SLA is attached and incorporated herein as **Exhibit "5"**.

**The Default and Proposed Settlement Agreement**

22.     On June 13, 2022, the Receiver issued a Notice of Default to the Debtors.

23.     On June 17, 2022, the Debtors objected to the Notice of Default.

24.     Now, in lieu of further litigation, the Receiver and the Debtors have reached a proposed resolution as addressed in the Settlement Agreement and Mutual Release (the "Agreement").

**The Requested Relief Should be Granted**

25.     Commensurate with the broad and extensive authority given to the Receiver under the Receivership Order, the Receiver files the Motion seeking approval of the Agreement.

11512859-12

26.     More specifically, the Agreement furthers the Receiver's duty to act in a judicious and expedited manner to identify, preserve, and collect Receivership Property. (*See* Receivership Order, ¶ 5(b)).

27.     Furthermore, all parties in interest concur that the resolution provided for in the Agreement between the Receiver and the Debtors is in the best interest of the Receivership Estate.

28.     Accordingly, the Receiver now seeks entry of a proposed order, substantially in the form of the proposed order attached hereto as **Exhibit "1"**.

**Conclusion**

29.     Counsel for each of Citizens Bank and SVB has approved the terms of the Agreement as identified in **Exhibit "2"** and has advised undersigned counsel for the Receiver that their respective clients affirmatively support the relief requested in the Unopposed Motion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 22, 2022.

_____
Marianne Curtis

7

11512859-12

**<u>EXHIBIT 1</u>**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE SMERLING LITIGATION,

21 Civ. 2552 (JPC)

**[PROPOSED] ORDER GRANTING UNOPPOSED MOTION**
**TO APPROVE SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

THIS MATTER is before the Court upon the Unopposed Motion to Approve Settlement Agreement and Mutual Release (the "Unopposed Motion")[1] (Consolidated Action, ECF No. ___) of James S. Feltman, solely in his capacity as the receiver (the "Receiver") appointed pursuant to that certain (a) *Order Appointing Receiver*, dated May 14, 2021 (Case No. 1:21-cv-05766-JPC, ECF No. 28) (the "Receivership Order") and (b) *Order Granting Joint Motion to (I) Consolidate SVB Action and Citizens Bank Action Into a Single Action, (II) Appoint James Feltman as Receiver in Consolidated Action, and (III) Grant Unopposed Receivership Expansion Motion*, dated July 19, 2021 (Case No. 1:21-cv-02552-JPC, ECF No. 98) (the "Receivership Consolidation/Expansion Order" and together with the Receivership Order, collectively, the "Orders"), seeking entry of an order (i) approving the terms of the Settlement Agreement and Mutual Release (the "Agreement" attached to the Declaration (defined herein) as Exhibit "2"; and (ii) granting the Receiver such other and further relief as the Court deems just and proper; and

---

[1]   Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Unopposed Motion.

11513099-6

WHEREAS the Court finds, based on the record in this Consolidated Action, including the *Declaration of Marianne Curtis in Support of the Unopposed Motion to Approve Settlement Agreement and Mutual Release* (Consolidated Action, ECF No. ___) (the "Declaration"), that it is appropriate to grant the relief requested in the Unopposed Motion; and

WHEREAS, the terms of the Agreement are fair and reasonable under the circumstances, were negotiated in good faith and at arm's length, reflect the Receiver's exercise of prudent business judgment consistent with his fiduciary duties, and, where applicable, are supported by reasonably equivalent value and fair consideration; and

WHEREAS, the Receiver has shown good cause for the entry of this Order and the Court concludes that entry of this Order is necessary to preserve and maximize the value of the Receivership Property in the best interests of the creditors of the Receivership Estate; and

WHEREAS, the Receiver has provided adequate and sufficient notice of the Unopposed Motion by providing written notice to creditors and interested parties identified on the Receiver's declaration of service filed in conjunction of the Unopposed Motion, and therefore, such notice is appropriate, adequate, and proper under the circumstances involved in this case.

IT IS ACCORDINGLY HEREBY:

ORDERED that the Unopposed Motion is granted subject to the terms and conditions set forth in this Order, and any objections that have not previously been withdrawn are hereby overruled; and it is further

ORDERED, that the terms of the Agreement are approved in their entirety; and it is further

ORDERED that the Court shall retain jurisdiction to enforce the terms and conditions of the Agreement; and it is further

ORDERED that, within ten (10) days following the entry of this Order, the Receiver shall serve a copy of this Order upon the Florida Defendants and the New York Defendants by service, via Federal Express, electronic mail or any other mechanism reasonably designed to successfully effect service, as follows:

(a)     Upon Mr. Smerling through his counsel who has appeared in the Consolidated Action;

(b)     Upon JES Global Capital GP III, LLC, directed to its registered agent in Delaware; and

(c)     Upon JES Global Capital II, L.P. and JES Global Capital GP II, LLC, directed to the Secretary of State for the State of Florida as neither entity currently has a registered agent in Florida.

Dated: July ___, 2022
      New York, New York

_____
John P. Cronan, U.S.D.J.

**<u>EXHIBIT 2</u>**

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

IN RE SMERLING LITIGATION

21 Civ. 2552 (JPC)

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement"), dated as of July 22, 2022, by and among:

(i)    James S. Feltman, not in his individual capacity but solely in his capacity as the receiver (the "Receiver") pursuant to that certain *Order Appointing Receiver*, dated May 14, 2021 (Case No. 1:21-cv-05766-JPC, ECF No. 28) (the "Receivership Order") and that certain *Order Granting Joint Motion to (I) Consolidate SVB Action and Citizens Bank Action Into a Single Action, (II) Appoint James Feltman as Receiver in Consolidated Action, and (III) Grant Unopposed Receivership Expansion Motion*, dated July 19, 2021 (Case No. 1:21-cv-02552-JPC, ECF No. 98) (the "Receivership Consolidation/Expansion Order" and together with the Receivership Order, collectively, the "Orders"); and

(ii)    World Class Auto Repair, LLC ("WCA") and Jeffrey A. Kranitz ("Kranitz"), in his individual capacity (collectively, the "Debtors").

The Receiver and the Debtors are collectively referred to herein as "Parties" and each a "Party".

## RECITALS

A.    The Senior Secured Balloon Promissory Note dated November 19, 2019 (the "Note") between Canes Twenty Two (the "Lender") and WCA was for $500,000 due in one final balloon payment on November 1, 2026. A true and correct copy of the Note is attached and incorporated hereto as **Exhibit "A"**.

B.      In the Pledge Agreement dated April 21, 2020 (the "<u>Pledge</u>"), Kranitz pledged One Hundred (100) shares in WCA in connection with the Note. A true and copy of the Pledge is attached and incorporated hereto as **Exhibit "B"**.

C.      The Side Letter Agreement dated April 21, 2020 (the "<u>SLA</u>") (together with the Note and the Pledge, the "<u>Loan Documents</u>") between the Lender on one side and WCA and Kranitz on the other, memorialized certain conditions and obligations pertaining to the Note and the Pledge. A true and correct copy of the SLA is attached and incorporated hereto as **Exhibit "C"**.

D.      Pursuant to the Orders, the Receiver assumes the position of the Lender with respect to the Loan Documents.

E.      On June 13, 2022, the Receiver issued a Notice of Default to the Debtors.  Debtors objected to the Notice of Default issued by the Receiver.

**NOW, THEREFORE**, in consideration of the foregoing Recitals (which are incorporated herein by reference), the promises set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in order to avoid unnecessary litigation and expense, the Parties hereto, intending to be legally bound hereby, agree as follows:

1.      <u>Payment by the Debtors to the Receiver</u>:  Subject to the occurrence of the Effective Date (defined below), the Debtors shall pay the Receiver THREE HUNDRED AND TWENTY-FIVE THOUSAND ($325,000.00) in cash by wire transfer within thirty (30) business days after the Effective Date (the "<u>Payment Obligation</u>").

2.      <u>Satisfaction of Debt</u>:  Upon receipt of the Payment Obligation, the Loan Documents will thereby be satisfied in full. Within 15 days of the receipt of the Payment Obligation, the Receiver shall file a UCC-3 form terminating the lien against Debtors in the form of Exhibit "D" attached and incorporated hereto.

3.      <u>Releases of the Debtors by the Receiver</u>.  Upon receipt of the Payment Obligation, the Receiver, on behalf of Lender, shall forever waive, release, and discharge each of the Debtors and each of the Debtors' predecessors, successors, assignors or assignees, heirs, executors, administrators, parents, subsidiaries, affiliates, present or former partners, directors, officers, employees, agents, attorneys, and direct or indirect shareholders, and its and their respective parents, subsidiaries, affiliates, present or former partners, directors, officers, employees, agents, attorneys, and direct or indirect shareholders, of and from any and all manner of actions, causes of action, suits, obligations, debts, liabilities, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, executions, claims and demands whatsoever, whether in law or in equity, whether known, unknown, or hereafter becoming known, whether suspected or unsuspected or by reason of any matter, cause, or thing, including, without limitation, any claim arising under the Loan Documents or the Land Rover (VIN No. SALAK2V66GA792286); provided, however, that nothing herein shall be deemed or construed as a waiver of any rights or claims based on any alleged breach of this Agreement.

4.      <u>Releases of the Receiver by the Debtors</u>.   Upon receipt of the Payment Obligation, the Debtors each forever waive, release, and discharge the Receiver, Lender and each of their predecessors, successors, assignors or assignees, heirs, executors, administrators, parents, subsidiaries, affiliates, present or former directors, officers, employees, agents, attorneys, and direct or indirect shareholders, and their respective parents, subsidiaries, affiliates, present or former directors, officers, employees, agents, attorneys, and direct or indirect shareholders, of and from any and all manner of actions, causes of action, suits, obligations, debts, liabilities, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, executions, claims and demands whatsoever, whether in law or in equity, whether known, unknown, or hereafter becoming known, whether suspected or unsuspected or by reason of any matter, cause, or thing, including, without limitation, any claim arising under the Loan Documents or the Land Rover (VIN No. SALAK2V66GA792286); provided, however, that nothing herein shall be deemed or construed as a waiver of any rights or claims based on any alleged breach of this Agreement.

5.      <u>Court Approval</u>:  The Receiver will file a motion (the "<u>Motion</u>") with the above-captioned Court (the "<u>Court</u>") seeking the entry of an order in form and substance reasonably satisfactory to each of the Parties to this Agreement approving this Agreement (the "<u>Approval Order</u>").  The Debtors and the Receiver agree to cooperate with each other and use their collective best efforts to obtain approval of the Motion and entry of the Approval Order.  If any objection to the Approval Order is filed, the Debtors and the Receiver shall oppose any such objection and shall take all reasonable steps to ensure that the Approval Order becomes a final order.

6.      <u>Effective Date</u>.  The effective date of this Agreement (the "<u>Effective Date</u>") shall be the first business day after the Approval Order becomes a final order.  For purposes of this Agreement, a "final order" means an order of the Court as to which the time to file an appeal or a further appeal, any motion for rehearing or reconsideration, or a petition for writ of certiorari has expired and no such appeal, motion, or petition is pending, or if such appeal, motion or petition has been filed, as to which such appeal, motion or petition has been fully and finally resolved and there has been no order or judgment entered reversing, vacating, annulling or modifying the order.

7.      <u>Tolling of Statute of Limitations</u>.  In the event of an appeal of the Approval Order as between the Parties, all applicable statutes of limitations shall be tolled until sixty (60) days after the resolution of such appellate proceedings.

8.      <u>Non-Admission</u>.  Nothing herein is or shall be deemed, construed or offered as an admission, evidence or concession by any of the Parties in respect of any claims or defenses, including, without limitation, any claims referenced in this Agreement.  This Agreement shall be subject to the provisions of Rule 408 of the Federal Rules of Evidence and shall not be admissible for any reason or purpose should the Effective Date not occur.

9.      <u>Representations</u>.  The Parties each acknowledge that this Agreement is solely for the purpose of resolving the Parties' differences, and that none of the Parties, in settling these differences, admits liability for or otherwise makes any representations concerning the merits of the claims and defenses asserted, or which could have been asserted, by any of the other Parties. Each of the Parties hereto specifically denies any such liability and further agrees that neither this

Agreement nor any of the statements contained herein, may be used as evidence by any party or by any third party against another party hereto in any proceeding of any sort, except in a proceeding brought among the Parties, or any of them, to enforce any term of this Agreement.

10.    <u>Successors and Assigns</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

11.    <u>No Assignment or Transfer</u>.  The Parties represent and warrant that they have not assigned nor in any way transferred all or any portion of any claims described herein or authorized any other person or entity to assert any such claims or rights on its behalf.

12.    <u>No Third-Party Beneficiaries</u>.  Except as expressly provided in this Agreement, no persons or entities who are not specifically identified in this Agreement as having rights hereunder (which identification may be by name or title or description, in any such capacity), shall have any right to seek to enforce or interpret this Agreement or obtain any rights or benefits hereunder.

13.    <u>Advice of Counsel</u>.  Each of the Parties, by the execution of this Agreement, represents that such Party has reviewed each and every term of this Agreement with their legal counsel and that, hereafter, they shall not deny the validity of this Agreement on the ground that they did not have the advice of counsel.

14.    <u>Legal Fees</u>.  Each Party shall be responsible for their own attorneys' fees and costs in connection with this Agreement.  In the event that any Party hereto fails or refuses to perform any of the terms or conditions of this Agreement or otherwise breaches any of the provisions hereof, then in that event, either party may seek to enforce this Agreement by motion to the Court and the prevailing Party on such motion to enforce settlement shall be entitled to have and recover from the other Party reasonable attorney's fees and court costs incurred by that Party as determined by the court.

15.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement among the Parties concerning the matters set forth herein and supersedes any and all prior agreements between them concerning the matters set forth herein.

16.    <u>Headings</u>.  The headings in this Agreement are for purposes of reference only and shall not limit or otherwise affect the meaning of this Agreement.

17.    <u>Savings Clause</u>.  If any one or more of the provisions contained in this Agreement shall be invalid, illegal, or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired.

18.    <u>Jurisdiction; Choice of Law</u>.  Each of the Parties hereto irrevocably consents to the exclusive jurisdiction of the Court with respect to any action to interpret or enforce the terms and provisions of this Agreement.  This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Florida, without regard to its conflict of laws provisions.

4

19. <u>Amendments</u>.  This Agreement may be amended, modified, superseded, cancelled, and the terms and conditions of this Agreement may be waived, only by a written instrument signed by all the Parties, or in the case of a waiver, by the Party waiving compliance, and subject, to the extent required, to the approval of the Court.

20. <u>Notices</u>.  All notices and communications required or permitted by this Agreement shall be made in writing, signed by the Party making the same and shall be deemed given or made (i) on the date delivered if delivered by e-mail, telecopy or other standard form of written telecommunication and confirmed by receipt of electronic confirmation or other evidence of receipt, (ii) on the date delivered, if delivered in person, (c) on the third business day after mailing by registered or certified mail (return receipt requested) (with postage and other fees prepaid) or (d) on the day after it is delivered, prepaid, by any overnight express delivery service that confirms to the sender delivery on such day, as follows:

<u>If to the Receiver</u>:

James S. Feltman
15280 Northwest 79th Court Suite 100
Miami, Florida  33016
Email:   James.Feltman@Kroll.com

with a copy to (which shall not constitute notice):

Berger Singerman LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Attn:    Paul Steven Singerman, Esq.
         Marianne Curtis, Esq.
Email:   singerman@bergersingerman.com
         mcurtis@bergersingerman.com

<u>If to Debtors</u>:

World Class Auto Repair Center, LLC
9789 Glades Road
Boca Raton, Florida
33434
Attn: Jeffrey Kranitz

with a copy to (which shall not constitute notice):

Di Pietro Partners
901 E Las Olas Blvd, Suite 202
Fort Lauderdale, Florida
33301
Attn:    Nicole Martell, Esq.
Email:   Nicole@ddpalaw.com

5

11510795-12

21.    <u>Execution in Counterparts</u>.    This Agreement may be executed in counterparts, all of which shall be considered one and the same agreement.  The Parties agree that facsimile and pdf signatures shall be considered for these purposes as original signatures.


PARTIES:

JAMES S. FELTMAN

By:    _James S. Feltman_____

James S. Feltman
In his capacity as Receiver Appointed in the United
States District Court in the Southern District of New
York


WORLD CLASS AUTO REPAIR, LLC

By:    _____

Jeffrey A. Kranitz
Owner / Principal


JEFFREY A. KRANITZ

By:    _____

Jeffrey A. Kranitz


6

**<u>EXHIBIT A</u>**

# SENIOR SECURED BALLOON PROMISSORY NOTE

**$500,000.00**                                    **Wellington, Florida**
                                                   **November 19, 2019**

FOR VALUE RECEIVED, the undersigned, (jointly and severally, if more than one) ("Obligor" and/or "Maker") agrees and promises to pay to the order of **CANES TWENTY TWO, LLC**, a Florida limited liability company ("Holder"), the principal sum of Five Hundred Thousand Dollars ($500,000.00), together with interest thereon at the rate of 2.00% per annum from the date hereof until maturity hereunder as set forth below.   The entire principal balance and all accrued interest thereon shall be due and payable in full in lawful money of the United States at 4095 State Rd. 7, L-306, Wellington, Florida 33449, or such other address as the Holder from time to time may specify by written notice to the Maker.  The principal and interest to be paid as follows:

One final balloon payment of all unpaid principal and accrued and unpaid interest shall be due and payable in full on or before November 1, 2026 (the "Maturity Date").

**1.**      **Prepayment.**   The indebtedness evidenced by this Note may be prepaid in whole or in part at any time without penalty or premium.

**2.**      **Seniority and Security.**

a.      <u>Seniority of Note</u>.  This Note shall rank senior to any and all of Maker's liabilities, obligations and debts, now existing or hereinafter incurred or created, unless the Maker receives the prior written consent of the Holder to otherwise incur liabilities, obligations and debts senior to or on parity with this Note.

b.      <u>Security Interest</u>.  The indebtedness evidenced by this Note, and all other indebtedness of Maker to Holder, however and whenever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, sole, joint or several, due to become due, or which may be hereafter contracted or acquired, whether arising in the ordinary course of business or otherwise (hereinafter with this Note, collectively called "Liabilities"), is secured by a good and valid first priority and continuing security interest in and lien upon the collateral described on Schedule A of the Note (the "Collateral").  Holder shall have such rights with respect to the Collateral as is authorized by law.  Maker hereby irrevocably authorizes the Holder to file in any filing office in any Uniform Commercial Code ("UCC") jurisdiction a financing statement, and amendments thereto, related to the Collateral, and to provide all information required by the UCC of the State of Florida or such jurisdiction for the sufficiency of any such financing statement or amendment.  Upon full and final repayment of all outstanding amounts hereunder, the Holder consents to and agrees to terminate any UCC filing it may have previously made.

**3.**      **Covenants of the Maker.** The Maker covenants and agrees that, so long as this Note remains outstanding and unpaid, in whole or in part:

a.      <u>Payment of Principal and Interest</u>. The Maker will duly and punctually pay or cause to be paid the interest and principal of this Note, at the time and in the manner provided for herein.

b.      <u>Payment of Taxes</u>. The Maker will promptly pay and discharge all lawful taxes, assessments and governmental charges or levies imposed upon it, its income and profits, or any of its property, before the same shall become in default, as well as all lawful claims for labor, materials and supplies, which amounts if unpaid, might become a material lien or charge upon such properties or any part thereof. However, the Maker shall not be required to pay and discharge any such tax, assessment, charge, levy or claim so long as the validity thereof shall be contested in good faith by appropriate proceedings.

c.      <u>Maintenance of Property</u>. The Maker will at all times maintain, preserve, protect and keep its property used or useful in the conduct of its business in good repair, working order and condition and will, from time to time, make all necessary and proper repairs, renewals, replacements, betterments and improvements thereto.

d.      <u>Insurance</u>. The Maker will keep adequately insured, by financially sound reputable insurers, all property of a character usually insured by similar entities and carry such other insurance as is usually carried by similar entities.

e.      <u>Books and Records</u>. The Maker will at all times maintain books of account in which all of its financial transactions are duly recorded in conformance with generally accepted accounting principles.

f.      <u>Existence of Liens</u>. Unless the Holder shall have otherwise given prior written consent, so long as this Note is outstanding, the Maker shall not allow or suffer to exist any liens upon or in any property and assets owned by the Maker.

**4.      Events of Default.**

a.      "<u>Event of Default</u>", wherever used herein, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

i.      Maker fails to make a payment of any interest or principal when the same becomes due and payable, and such failure continues for 15 days or longer (a "<u>Defaulted Payment</u>");

ii.      Maker fails to perform or observe any other material term, covenant or agreement contained in this Note, and the default continues for a period of 30 days after written notice of such failure, requiring the Maker to remedy the same;

iii.      any representation or warranty made or deemed made by or on

behalf of the Maker in connection with this Note shall prove to have been incorrect in any material respect when made or deemed made;

               iv.      any proceeding under any applicable U.S. federal or state bankruptcy, insolvency, reorganization or other similar law relating to the Maker or to all or any material part of its properties is instituted against the Maker without its consent and continues undismissed or unstayed for sixty (60) calendar days, or any order for relief is entered in any such proceeding or there is an entry by a court having competent jurisdiction of (A) a decree or order for relief in respect of the Maker in an involuntary case or proceeding under any applicable U.S. federal or state bankruptcy, insolvency, reorganization or other similar law or (B) a decree or order adjudging the Maker bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of the Maker, under any applicable U.S. federal or state law, or appointing a custodian, receiver, liquidator, assignee, trustee, sequestrator or other similar official of the Maker or of any substantial part of its property, or ordering the winding up or liquidation of its affairs; or

               v.      the commencement by the Maker of a voluntary case or proceeding under any applicable U.S. federal or state bankruptcy, insolvency, reorganization or other similar law or of any other case or proceeding to be adjudicated a bankrupt or insolvent, or the consent by the Maker to the entry of a decree or order for relief in respect of the Maker in an involuntary case or proceeding under any applicable U.S. federal or state bankruptcy, insolvency, reorganization or other similar law or to the commencement of any bankruptcy or insolvency case or proceeding against the Maker, or the consent by the Maker to the appointment of or the taking possession by a custodian, receiver, liquidator, assignee, trustee, sequestrator or other similar official of the Maker or of any substantial part of its property, or the making by the Maker of an assignment for the benefit of creditors.

        b.      <u>Acceleration of Payment</u>.  If an Event of Default occurs and is continuing, Holder may immediately declare due and payable the principal sum then remaining unpaid with accrued interest without notice, time being of the essence of this Note and the principal sum and accrued interest shall both bear interest at the highest rate allowable by law ("Default Rate") from the date of default until paid.  Upon a declaration of acceleration, such principal and interest shall be immediately due and payable.

        c.      <u>Collections</u>.  If an Event of Default with respect to this Note occurs and is continuing, the Holder may pursue any available remedy by proceeding at law or in equity to collect the Defaulted Payment or to enforce the performance of any provision of this Note in compliance with the terms and conditions stated herein.

        d.      <u>No Exclusive Right or Remedy</u>.  Except as otherwise provided herein, no right or remedy conferred in this Note upon the Holder is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

Page 3 of 6

e.      No Waiver of Right or Remedy.  No delay or omission of the Holder of this Note to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or any acquiescence therein. Every right and remedy given herein or by law to the Holder may be exercised from time to time, and as often as may be deemed expedient, by the Holder.

**5.  Miscellaneous.**

a.      Interest Rate.  The interest rate on this Note shall never be greater than an amount which, if added to the amount of any discount, additional fees or charges paid by Maker which constitute interest under the laws of the State of Florida, would cause the total amount of interest to exceed the maximum rate of interest chargeable to Maker under applicable law.  Holder agrees to refund, and the Maker agrees to accept refund of, any and all sums received hereunder by Holder which are determined to be usurious by any court of competent jurisdiction.

b.      Governing Law.  This Note shall be governed by and interpreted under the internal laws of the State of Florida, notwithstanding any conflict of law principals.  This Note and the Collateral shall be deemed issued and delivered within the State of Florida.

c.      Assignment.  Maker shall not assign any of its respective rights, remedies, or obligations described in this Note without the prior written consent of the Holder.  Holder may freely assign any of its respective rights, remedies, or obligations described in this Note without the prior written consent of the Maker.

d.      Costs and Attorneys' Fees.  If either party shall bring an action to recover any sum due hereunder, or for any breach hereunder, and shall obtain a judgment or decree in its favor, the court may award to such prevailing party its reasonable costs and reasonable attorneys' fees, specifically including reasonable attorneys' fees incurred in connection with any appeals.

e.      Headings.  Article and Section headings used herein are for convenience of reference only, are not part of this Note and shall not affect the construction of, or be taken into consideration in interpreting, this Note.

f.      Severability.   If any provision of this Note is invalid, illegal or unenforceable, the balance of this Note shall remain in effect.

g.      Entirety.  This Note constitutes the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.  This Note shall be binding on the Maker and any of Maker's representatives, affiliates, parents, subsidiaries, related entities, and/or such other entities in which Maker holds a controlling interest, together with their respective successors and assigns.

**THIS IS A BALLOON NOTE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $500,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY HOLDER UNDER THE TERMS OF THIS NOTE.**

Maker's Address:

**WORLD CLASS AUTO REPAIR CENTER, LLC**, a Florida limited liability company

9787 Glades Road
Boca Raton, FL 33434

By: _____
Name: Jeffrey A. Kranitz
Its:    Manager

# SCHEDULE A

## (The Collateral)

In order to secure its obligations under the Note, Maker hereby grants to Holder a good and valid first priority and continuing security interest in and lien upon the following described property of Maker, which is located at 9787 Glades Road, Boca Raton, FL 33434, and/or any other address where Maker may thereafter be located (the "Collateral''), up to the amount of the Note, whether any such property is now owned or hereafter acquired or existing, and all records (including computer software) pertaining to the following, and all substitutions for, all proceeds and all products of the following (including insurance proceeds):

a.      all inventory, goods (including returned or repossessed goods and all goods, the sale of which gives rise to accounts receivable, contract rights, chattel paper, general intangibles or instruments), merchandise and other personal property, in each case whether now owned or hereafter produced, acquired by Maker which are for sale or lease or are furnished or to be furnished under a contract of service, work in process or used in Maker's business;

b.      all non-trust related accounts, accounts receivable, contract rights, general intangibles, chattel paper and instruments (including without limitation instruments evidencing any obligation to Maker for payment for goods sold or leased or services rendered or otherwise), non-trust related deposit accounts, documents, rights to payment evidenced by chattel papers, documents or instruments, letters of credit, letter of credit rights, supporting obligations of Maker, and the rights to payment for money or funds advanced (excluding non-trust related advancements) or sold together with all payments thereon or thereunder, goodwill, licenses, permits and privileges, and rights of indemnification of Maker;

c.      all machinery, equipment, furniture and other tangible personal property and fixtures of Maker, together with all accessions, additions, accessories, parts and equipment now or hereafter affixed thereto or used in connection therewith;

d.      all Software, acquired or purchased by Maker and not developed by Maker.  For purposes of this Agreement, "Software" consists of all (i) computer programs and supporting information owned or licensed by Maker, and (ii) computer programs embedded in goods and any supporting information owned or licensed by Maker whether or not the program is associated with the goods in such a manner that it customarily is considered part of the goods, and whether or not, by becoming the owner of the goods, a person acquired a right to use the program in connection with the goods, and whether or not the program is embedded in goods that consist solely of the medium in which the program is embedded; and

e.      all of the issued, or to be issued, outstanding membership interest in Maker and all of the issued, or to be issued, outstanding shares of stock in World Class Auto Repair Center, Inc., a Florida corporation, whether such membership interest or shares of stock are now owned or hereafter acquired or existing.

**EXHIBIT B**

## PLEDGE AGREEMENT

THIS PLEDGE AGREEMENT (this "Pledge") is made effective April 21, 2020, by and between **JEFFREY A. KRANITZ** (the "Debtor"), and **CANES TWENTY TWO, LLC**, a Florida limited liability company (the "Secured Party"), collectively, the "parties."

### RECITALS

WHEREAS, the Debtor is the owner of One Hundred (100) Shares of WORLD CLASS AUTO REPAIR CENTER, INC., a Florida corporation (the "Corporation"); and

WHEREAS, the Debtor desires to pledge One Hundred (100) Shares in the Corporation (the "Shares") in connection with that certain Senior Secured Balloon Promissory Note given by the Corporation to the Secured Party in the original principal amount of Five Hundred Thousand Dollars ($500,000.00) (the "Note");

WHEREAS, the Secured Party has agreed to such loan conditioned upon the Debtor's Note being secured by the Shares;

WHEREAS, in consideration of the substantial performance by the Debtor, and to provide an efficient manner to facilitate the transfer of the Shares back to the Secured Party in the Event of Default (as such term is defined in the Note and this Pledge), the Secured Party and the Debtor desire to execute that certain Conditional Assignment of Shares to be executed contemporaneously with this Pledge (the "Conditional Assignment"); and

NOW, THEREFORE, in consideration of the premises and the mutual promises of the parties hereto and the mutual benefits to be gained by the performance thereof, the parties agree as follows:

### AGREEMENTS

1.   **Recitals Incorporated**.  The Recitals are incorporated and made part of this Pledge.

2.   **Debtor's Pledge of Shares**.  For value received, the Debtor hereby assigns and grants to the Secured Party, with full recourse to the Debtor, upon and subject to the terms and conditions set forth in this Pledge, a security Shares in and to the following described personal property (the "Collateral"):

   A.   the Shares in the Corporation;

   B.   all rights, powers, privileges and preferences pertaining or incidental to the Shares in the Corporation described in Section 2.A. above and any co- or parallel investment rights, rights to subscribe, distributions of cash or other property (including, without limitation, membership Shares and debt), liquidating distributions, allocations, new Securities (whether certificated or uncertificated) and any other property to which the Debtor may become entitled by reason of the

Debtor's ownership of the Shares or any Securities pledged and assigned hereunder or from time to time; and

C.      all proceeds of any of the property described in Sections 2.A. and 2.B. above.

3.    **The Obligations.**  The security Shares herein granted (the "Security Shares") shall secure full payment and performance of:  **(a)** the Note (such Note and any notes given in modification, renewal, extension or substitution thereof being herein sometimes collectively referred to and included in the term the "Note"); and **(b)** the due and punctual observance and performance of each and every agreement, covenant and condition to be observed or performed on the Debtor's part under this Pledge, the Guaranty, and the Note (which Note and all of which agreements, covenants and conditions under this Pledge and the Note are hereinafter referred to together as the "Obligations").

4.    **Priority.**  The Debtor represents and warrants that the Security Shares are first and prior security Shares in and to all of the Collateral, and there are no liens thereon or security Shares therein on the date hereof in existence prior to the Debtor's acquisition of the Collateral.

5.    **Conditional Assignment**.  Concurrent with the execution of this Pledge, the Debtor will deposit the Conditional Assignment with the Secured Party. Upon the occurrence of an Event of Default (as defined hereunder or under the Note), the Debtor agrees that the Secured Party may deliver the Conditional Assignment to the Corporation on its behalf.

6.    **Corporation's Receipt and Agreement**.  Upon presentment of the receipt of the Conditional Assignment to the Corporation, the Corporation agrees to consent to the acceptance of the Secured Party as a Shareholder of the Corporation.  The parties agree that the Shareholder and the Corporation shall be under no duty to determine if an Event of Default had occurred under the Note or this Pledge, and further, that the Debtor agrees to indemnify and hold the Corporation harmless for any acts in allowing the Secured Party to become a Shareholder of the Corporation if the Conditional Assignment is received by the Corporation.

7.    **Event of Default**.  Each of the following shall be deemed an "Event of Default" under this Pledge:

A.      nonpayment, nonperformance or non-observance of any of the covenants, agreements or conditions of this Pledge, the Note, the Guaranty, or any other document, agreement, instrument now or hereafter securing this Pledge and/or the Note (collectively, the "Security Instruments" or "Security Instrument") which nonpayment, nonperformance or non-observance shall have continued beyond the expiration of any applicable grace or notice period;

B.      the occurrence of any event or condition which would entitle the Secured Party or any other obligee to exercise any of its remedies under this Pledge;

C.      the non-receipt by the Secured Party of any required payment under the Note in accordance with the Note;

2

D.     a default under this Pledge, the Note, the Guaranty, or other Security Instrument;

E.     a default under any document, agreement or instrument evidencing any obligation or indebtedness secured in whole or in part by any or all of the property covered by any of the Security Instruments; or

F.     breach of, or the proving false or misleading in any material respect, of any representation or warranty now or hereafter made to the Secured Party by, on behalf of, or for the benefit of the Debtor, or contained in:

     (i)      this Pledge;
     (ii)     the Note;
     (iii)    the Guaranty;
     (iii)    any Security Instrument; or
     (iv)    any statement, financial statement, certificate or other document, certificate, agreement or instrument furnished, signed or executed in connection herewith by, on behalf of, or for the benefit of Debtor.

8.     **Secured Party's Remedies Upon Event of Default**.  Upon an Event of Default, the Secured Party shall have all rights and remedies in and against the Shares and otherwise of a secured party under the Uniform Commercial Code of Florida and all other applicable laws and shall also have all the rights provided herein, all of which rights and remedies shall be cumulative to the fullest extent permitted by law (the "UCC").  In connection with the foregoing, the Secured Party shall have the right:

A.     to declare the Note immediately due and payable in full, with all accrued Shares thereon; and

B.     to inure to all of the rights, benefits and Shares of the Debtor with regard to the Shares.

9.     **Release of Pledge**.  Upon the satisfaction of all obligations of the Debtor to the Secured Party secured by this Pledge, the Secured Party shall return to the Debtor the Note, this Pledge and Security Instruments and shall endorse all instruments to the Debtor or the Debtor's order, and give an assignment of such documents in recordable form, if necessary.

10.    **Amendment**.  This Pledge may only be modified, amended or changed by a written instrument executed with the same formalities as this instrument.

3

11.   **Miscellaneous Provisions**.

    A.   <u>Applicable Law, Jurisdiction and Venue</u>.   This Pledge shall be governed by, construed and enforced in accordance with the laws of the State of Florida.   The venue of any action brought to construe this Pledge, specific performance of any contractual obligation or other cause of action directly related to this Pledge will be Florida, and any court therein having jurisdiction over the subject matter of the dispute or matter.   All parties hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

    B.   <u>Notices</u>.   All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been given when delivered by hand, five days following the date of deposit in the United States mail, by registered or certified mail, postage prepaid, return receipt requested, or on the delivery date shown on a written verification of delivery provided by a reputable private delivery service, if addressed to the last address provided to the sender by the addressee.

    C.   <u>Complete Agreement</u>.   This Pledge sets forth the entire agreement and understanding of the parties and supersedes all prior agreements, understandings, negotiations, and discussions, both written and oral, among such parties with respect to such subject matter.

    D.   <u>Benefit and Binding Effect</u>.   The terms and provisions of this Pledge shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, legal representatives, and assigns.

    E.   <u>No Third Party Beneficiary</u>.   Nothing expressed or implied in this Pledge is intended or shall be construed upon or give any person, firm, corporation, partnership, association or other entity, other than the parties hereto and their respective heirs, personal representatives, legal representatives and assigns, any rights or remedies under, or by reason of this Pledge.

    F.   <u>Severability</u>.   The invalidity of any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Pledge shall not affect the enforceability of the remaining portions of this Pledge or any part hereof, all of which are inserted conditionally on their being valid in law, and, in the event that any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Pledge shall be declared invalid, this Pledge shall be construed as if such invalid word, phrase, sentence, clause, section or subsection had not been inserted.

    G.   <u>Section Headings</u>.   The section and other headings contained in this Pledge are for reference purposes only and shall not affect the meaning or interpretation of any provision of this Pledge.

4

H.  Pronouns and Plurals.  Whenever used in this Pledge and the context so requires, any pronoun shall include the corresponding masculine, feminine or neuter forms, and the singular form shall include the plural and vice versa.

I.  Attorneys' Fees.  If any party shall retain or engage an attorney or attorneys to collect, enforce, or protect such party's Shares with respect to this Pledge, the prevailing party shall be entitled to receive payment of all costs and expenses of collection, enforcement or protection, including reasonable attorneys' fees, whether or not suit is brought and through all appeals.

J.  Counterparts.  This Pledge may be executed in two (2) or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Pledge by facsimile or pdf file shall be effective as delivery of an original executed counterpart of this Pledge.  This Pledge may be executed by facsimile or electronic signature and any such facsimile or electronic signature shall be deemed to be of the same force and effect as a manually signed original.

K.  Definitions.  As used in this Pledge, the term "Securities" means any notes, stocks, treasury stocks, bonds, debentures, evidences of indebtedness, warrants, partnership or corporation Shares, stock options, Shares in limited liability companies, beneficial Shares in trusts or equity Shares of any nature whatsoever in any legal entity or, in general, any Shares or instrument commonly known as a "security", or any warrant or right to subscribe to or purchase any of the foregoing; and the term "Issuer" means, with respect to any Securities, the legal entity in which such Securities evidence an ownership or beneficial Shares.  All capitalized terms used but not otherwise defined in this Agreement shall have the respective meanings given them in the UCC (as defined in Section 8 above).

IN WITNESS WHEREOF, the parties hereto have executed this Pledge effective the date first above written.

DEBTOR:

_____
JEFFREY A. KRANITZ

SECURED PARTY:

CANES TWENTY TWO, LLC, a Florida limited liability company, By Canes Nineteen, LLC, a FL LLC, its Manager

By:  _____
Name:  ADAM BIEGUI
Its:  MANAGER

5

**EXHIBIT C**

## SIDE LETTER AGREEMENT

THIS SIDE LETTER AGREEMENT ("Side Letter") is entered into as of the 21st day of April, 2020, by and between **CANES TWENTY TWO, LLC**, a Florida limited liability company, and/or any related entities, subsidiaries, and/or affiliates ("Canes"), **JEFFREY A. KRANITZ** ("Jeff"), and **WORLD CLASS AUTO REPAIR CENTER, INC.,** a Florida Corporation, and/or any related entities, subsidiaries, and/or affiliates ("WCARC") (collectively Canes, Jeff, and WCARC shall be referred to as the "parties").

## RECITALS

WHEREAS, Canes and WCARC have entered into that certain Senior Secured Balloon Promissory Note in the original principal amount of Five Hundred Thousand Dollars ($500,000.00) effective as of November 19, 2019 (the "Note");

WHEREAS, Canes and Jeff have entered into that certain Pledge Agreement (the "Pledge") and Conditional Assignment of Shares (the "Conditional Assignment") relating to Jeff's pledge of One Hundred (100) Shares in WCARC to secure the Note effective as of even date hereof;

WHEREAS, the parties have made certain agreements and concessions relating to the forgiveness of the Note, and contemporaneous termination of the Pledge and the Conditional Assignment upon the occurrence of a certain event; and

WHEREAS, the parties hereto desire to make certain agreements and covenants related to the Note, the Pledge, and the Conditional Assignment and the transactions contemplated thereby in accordance with the terms and conditions of this Side Letter.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      Recitals. The recitals above are true and correct and are incorporated herein in their entirety.

2.      Forgiveness of the Note. In the event of the death of Elliot S. Smerling, so long as such death is not from the foul play, violence, or the like, of Jeff, or anyone acting on Jeff's behalf, directly or indirectly (the "Death"), Canes hereby agrees to forgive the remaining balance of principal and interest due under the Note and the Note shall be deemed satisfied, cancelled, voided and of no further force or effect.  Further, upon the Death, Canes agrees to terminate any and all UCC Financing Statements filed as security for the Note and such UCC Financing Statements shall be deemed satisfied, cancelled, voided and of no further force or effect.

3.      Termination of the Pledge and the Conditional Assignment.  Contemporaneously upon the Death, the Pledge and the Conditional Assignment shall be hereby satisfied, terminated, voided

1

and of no further force or effect. Additionally, upon the Death, Canes agrees to terminate any and all UCC Financing Statements filed as security for the Pledge and such UCC Financing Statements shall be deemed satisfied, cancelled, voided and of no further force or effect.

4.    <u>Intent and Beneficiary</u>. The parties agree that it is the intent of this Side Letter that the ultimate beneficiary of any of the Shares of WCARC shall be Jeff and the loan given by WCARC to Canes under the Note shall be ultimately forgiven upon the Death.

5.    <u>Miscellaneous Provisions</u>.

5.1.    <u>Applicable Law, Jurisdiction and Venue</u>. This Side Letter shall be governed by, construed and enforced in accordance with the laws of the State of Florida. The venue of any action brought to construe this Side Letter, specific performance of any contractual obligation or other cause of action directly related to this Side Letter will be Florida, and any court therein having jurisdiction over the subject matter of the dispute or matter. All parties hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

5.2.    <u>Complete Agreement</u>. This Side Letter sets forth the entire agreement and understanding of the parties and supersedes all prior agreements, understandings, negotiations, and discussions, both written and oral, among such parties with respect to such subject matter.

5.3.    <u>Benefit and Binding Effect</u>. The terms and provisions of this Side Letter shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, legal representatives, and assigns.

5.4.    <u>Severability</u>. The invalidity of any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Side Letter shall not affect the enforceability of the remaining portions of this Side Letter or any part hereof, all of which are inserted conditionally on their being valid in law, and, in the event that any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Side Letter shall be declared invalid, this Side Letter shall be construed as if such invalid word, phrase, sentence, clause, section or subsection had not been inserted.

5.5.    <u>Section Headings</u>. The section and other headings contained in this Side Letter are for reference purposes only and shall not affect the meaning or interpretation of any provision of this Side Letter.

5.6.    <u>Pronouns and Plurals</u>. Whenever used in this Side Letter and the context so requires, any pronoun shall include the corresponding masculine, feminine or neuter forms, and the singular form shall include the plural and vice versa.

5.7.    <u>Attorneys' Fees</u>. If any party shall retain or engage an attorney or attorneys to collect, enforce, or protect such party's rights with respect to this Side Letter, the prevailing party shall be entitled to receive payment of all costs and expenses of collection,

enforcement or protection, including reasonable attorneys' fees, whether or not suit is brought and through all appeals.

5.8.   <u>Counterparts</u>.  This Side Letter may be executed in two (2) or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Side Letter by facsimile or pdf file shall be effective as delivery of an original executed counterpart of this Side Letter.  This Side Letter may be executed by facsimile or electronic signature and any such facsimile or electronic signature shall be deemed to be of the same force and effect as a manually signed original.

5.9   <u>Defined Terms</u>. Capitalized terms used in this Side Letter and not otherwise defined shall have the meanings ascribed to such terms in the Note, the Pledge, or the Conditional Assignment.

IN WITNESS WHEREOF, the undersigned have executed this Side Letter effective the date first above written.

**CANES TWENTY TWO, LLC**, a Florida limited liability company , By Canes Nineteen, LLC, a FLLLC, its Manager

By: _____

Name: _____ADAM BLEGGI_____

Its: _____MANAGER_____

_____
**JEFFREY A. KRANITZ**

**WORLD CLASS AUTO REPAIR CENTER, INC.**, a Florida Corporation

By: _____
      Jeffrey A. Kranitz
Its:    President

3

**EXHIBIT D**

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE
# FINANCING STATEMENT AMENDMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Marianne Curtis, Esq.   305-755-9500

Email Address

**B. SEND ACKNOWLEDGEMENT TO:**

Name    Berger Singerman LLP

Address   1450 Brickell Avenue

Address   Suite 1900

City/State/Zip   Miami, FL 33131

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

| **1a. INITIAL FINANCING STATEMENT FILE #**<br>202001558811 | **1b.** ☐ | This FINANCING STATEMENT AMENDMENT is to be filed<br>[for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|---|

**2. CURRENT RECORD INFORMATION – DEBTOR NAME** – INSERT ONLY **ONE** DEBTOR NAME **(2a OR 2b)**

2a. ORGANIZATION'S NAME
WORLD CLASS AUTO REPAIR CENTER, INC. f/k/a WORLD CLASS AUTO REPAIR CENTER, LLC

| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**3. CURRENT RECORD INFORMATION – SECURED PARTY NAME** – INSERT ONLY **ONE** SECURED PARTY NAME **(3a OR 3b)**

3a. ORGANIZATION'S NAME
CANES TWENTY TWO, LLC

| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**4.** ☑ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**5.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**6.** ☐ **ASSIGNMENT**   ☐ Full or   ☐ Partial: Give name of assignee in item 9a or 9b and address of assignee in item 9c; and also give name of assignor in item 11.

**7.** ☐ **AMENDMENT** (PARTY INFORMATION): This Amendment affects   ☐ Debtor or   ☐ Secured Party of record. Check only <u>one</u> of these two boxes.

**Also check one of the following three boxes and provide appropriate information in items 8 and/or 9.**
☐ **CHANGE** name and/or address: Give current record name in item 8a or 8b; Also give new name (if name change) in item 9a or 9b and/or new address (if address change) in item 9c.   ☐ **DELETE** name: Give record name to be deleted in item 8a or 8b.   ☐ **ADD** name: Complete item 9a or 9b, and 9c.

**8. CURRENT RECORD INFORMATION** – INSERT ONLY **ONE** NAME **(8a OR 8b)** – Do Not Abbreviate or Combine Names

8a. ORGANIZATION'S NAME

| 8b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**9. CHANGED (NEW) OR ADDED INFORMATION:** – INSERT ONLY **ONE** NAME **(9a OR 9b)** – Do Not Abbreviate or Combine Names

9.a ORGANIZATION'S NAME

| 9.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 9.c MAILING ADDRESS Line One | This space not available. | | | | |
|---|---|---|---|---|---|
| MAILING ADDRESS Line Two | CITY | | STATE | POSTAL CODE | COUNTRY |

**10. AMENDMENT (COLLATERAL CHANGE):** check only <u>one</u> box.
Describe collateral ☐ DELETE or   ☐ ADD, or give entire   ☐ RESTATE collateral description, or describe collateral   ☐ ASSIGN collateral

**11. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor, which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

11a. ORGANIZATION'S NAME
CANES TWENTY TWO, LLC

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

**12. OPTIONAL FILER REFERENCE DATA**   Florida Secured Transaction Registry

**STANDARD FORM - FORM UCC-3  (REV.05/2013)**        **Filing Office Copy**        **Approved by the Secretary of State, State of Florida**

**EXHIBIT 3**

# SENIOR SECURED BALLOON PROMISSORY NOTE

**$500,000.00**                                                     **Wellington, Florida**
**November 19, 2019**

FOR VALUE RECEIVED, the undersigned, (jointly and severally, if more than one) ("Obligor" and/or "Maker") agrees and promises to pay to the order of **CANES TWENTY TWO, LLC**, a Florida limited liability company ("Holder"), the principal sum of Five Hundred Thousand Dollars ($500,000.00), together with interest thereon at the rate of 2.00% per annum from the date hereof until maturity hereunder as set forth below. The entire principal balance and all accrued interest thereon shall be due and payable in full in lawful money of the United States at 4095 State Rd. 7, L-306, Wellington, Florida 33449, or such other address as the Holder from time to time may specify by written notice to the Maker. The principal and interest to be paid as follows:

> One final balloon payment of all unpaid principal and accrued and unpaid interest shall be due and payable in full on or before November 1, 2026 (the "Maturity Date").

**1.** **Prepayment.** The indebtedness evidenced by this Note may be prepaid in whole or in part at any time without penalty or premium.

**2.** **Seniority and Security.**

a. **Seniority of Note.** This Note shall rank senior to any and all of Maker's liabilities, obligations and debts, now existing or hereinafter incurred or created, unless the Maker receives the prior written consent of the Holder to otherwise incur liabilities, obligations and debts senior to or on parity with this Note.

b. **Security Interest.** The indebtedness evidenced by this Note, and all other indebtedness of Maker to Holder, however and whenever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, sole, joint or several, due to become due, or which may be hereafter contracted or acquired, whether arising in the ordinary course of business or otherwise (hereinafter with this Note, collectively called "Liabilities"), is secured by a good and valid first priority and continuing security interest in and lien upon the collateral described on Schedule A of the Note (the "Collateral"). Holder shall have such rights with respect to the Collateral as is authorized by law. Maker hereby irrevocably authorizes the Holder to file in any filing office in any Uniform Commercial Code ("UCC") jurisdiction a financing statement, and amendments thereto, related to the Collateral, and to provide all information required by the UCC of the State of Florida or such jurisdiction for the sufficiency of any such financing statement or amendment. Upon full and final repayment of all outstanding amounts hereunder, the Holder consents to and agrees to terminate any UCC filing it may have previously made.

**3.** **Covenants of the Maker.** The Maker covenants and agrees that, so long as this Note remains outstanding and unpaid, in whole or in part:

a.  <u>Payment of Principal and Interest</u>. The Maker will duly and punctually pay or cause to be paid the interest and principal of this Note, at the time and in the manner provided for herein.

b.  <u>Payment of Taxes</u>. The Maker will promptly pay and discharge all lawful taxes, assessments and governmental charges or levies imposed upon it, its income and profits, or any of its property, before the same shall become in default, as well as all lawful claims for labor, materials and supplies, which amounts if unpaid, might become a material lien or charge upon such properties or any part thereof. However, the Maker shall not be required to pay and discharge any such tax, assessment, charge, levy or claim so long as the validity thereof shall be contested in good faith by appropriate proceedings.

c.  <u>Maintenance of Property</u>. The Maker will at all times maintain, preserve, protect and keep its property used or useful in the conduct of its business in good repair, working order and condition and will, from time to time, make all necessary and proper repairs, renewals, replacements, betterments and improvements thereto.

d.  <u>Insurance</u>. The Maker will keep adequately insured, by financially sound reputable insurers, all property of a character usually insured by similar entities and carry such other insurance as is usually carried by similar entities.

e.  <u>Books and Records</u>. The Maker will at all times maintain books of account in which all of its financial transactions are duly recorded in conformance with generally accepted accounting principles.

f.  <u>Existence of Liens</u>. Unless the Holder shall have otherwise given prior written consent, so long as this Note is outstanding, the Maker shall not allow or suffer to exist any liens upon or in any property and assets owned by the Maker.

**4.  <u>Events of Default</u>.**

a.  "<u>Event of Default</u>", wherever used herein, means any one of the following events (whatever the reason for such Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body):

i.  Maker fails to make a payment of any interest or principal when the same becomes due and payable, and such failure continues for 15 days or longer (a "<u>Defaulted Payment</u>");

ii.  Maker fails to perform or observe any other material term, covenant or agreement contained in this Note, and the default continues for a period of 30 days after written notice of such failure, requiring the Maker to remedy the same;

iii.  any representation or warranty made or deemed made by or on

behalf of the Maker in connection with this Note shall prove to have been incorrect in any material respect when made or deemed made;

iv.       any proceeding under any applicable U.S. federal or state bankruptcy, insolvency, reorganization or other similar law relating to the Maker or to all or any material part of its properties is instituted against the Maker without its consent and continues undismissed or unstayed for sixty (60) calendar days, or any order for relief is entered in any such proceeding or there is an entry by a court having competent jurisdiction of (A) a decree or order for relief in respect of the Maker in an involuntary case or proceeding under any applicable U.S. federal or state bankruptcy, insolvency, reorganization or other similar law or (B) a decree or order adjudging the Maker bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjustment or composition of or in respect of the Maker, under any applicable U.S. federal or state law, or appointing a custodian, receiver, liquidator, assignee, trustee, sequestrator or other similar official of the Maker or of any substantial part of its property, or ordering the winding up or liquidation of its affairs; or

v.       the commencement by the Maker of a voluntary case or proceeding under any applicable U.S. federal or state bankruptcy, insolvency, reorganization or other similar law or of any other case or proceeding to be adjudicated a bankrupt or insolvent, or the consent by the Maker to the entry of a decree or order for relief in respect of the Maker in an involuntary case or proceeding under any applicable U.S. federal or state bankruptcy, insolvency, reorganization or other similar law or to the commencement of any bankruptcy or insolvency case or proceeding against the Maker, or the consent by the Maker to the appointment of or the taking possession by a custodian, receiver, liquidator, assignee, trustee, sequestrator or other similar official of the Maker or of any substantial part of its property, or the making by the Maker of an assignment for the benefit of creditors.

b.       <u>Acceleration of Payment</u>.  If an Event of Default occurs and is continuing, Holder may immediately declare due and payable the principal sum then remaining unpaid with accrued interest without notice, time being of the essence of this Note and the principal sum and accrued interest shall both bear interest at the highest rate allowable by law ("Default Rate") from the date of default until paid.  Upon a declaration of acceleration, such principal and interest shall be immediately due and payable.

c.       <u>Collections</u>.  If an Event of Default with respect to this Note occurs and is continuing, the Holder may pursue any available remedy by proceeding at law or in equity to collect the Defaulted Payment or to enforce the performance of any provision of this Note in compliance with the terms and conditions stated herein.

d.       <u>No Exclusive Right or Remedy</u>.  Except as otherwise provided herein, no right or remedy conferred in this Note upon the Holder is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

      e.     <u>No Waiver of Right or Remedy</u>.  No delay or omission of the Holder of this Note to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or any acquiescence therein. Every right and remedy given herein or by law to the Holder may be exercised from time to time, and as often as may be deemed expedient, by the Holder.

## 5.  <u>Miscellaneous</u>.

      a.     <u>Interest Rate</u>.  The interest rate on this Note shall never be greater than an amount which, if added to the amount of any discount, additional fees or charges paid by Maker which constitute interest under the laws of the State of Florida, would cause the total amount of interest to exceed the maximum rate of interest chargeable to Maker under applicable law.  Holder agrees to refund, and the Maker agrees to accept refund of, any and all sums received hereunder by Holder which are determined to be usurious by any court of competent jurisdiction.

      b.     <u>Governing Law</u>.  This Note shall be governed by and interpreted under the internal laws of the State of Florida, notwithstanding any conflict of law principals.  This Note and the Collateral shall be deemed issued and delivered within the State of Florida.

      c.     <u>Assignment</u>.  Maker shall not assign any of its respective rights, remedies, or obligations described in this Note without the prior written consent of the Holder.  Holder may freely assign any of its respective rights, remedies, or obligations described in this Note without the prior written consent of the Maker.

      d.     <u>Costs and Attorneys' Fees</u>.  If either party shall bring an action to recover any sum due hereunder, or for any breach hereunder, and shall obtain a judgment or decree in its favor, the court may award to such prevailing party its reasonable costs and reasonable attorneys' fees, specifically including reasonable attorneys' fees incurred in connection with any appeals.

      e.     <u>Headings</u>.  Article and Section headings used herein are for convenience of reference only, are not part of this Note and shall not affect the construction of, or be taken into consideration in interpreting, this Note.

      f.     <u>Severability</u>.   If any provision of this Note is invalid, illegal or unenforceable, the balance of this Note shall remain in effect.

      g.     <u>Entirety</u>.  This Note constitutes the entire contract among the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.  This Note shall be binding on the Maker and any of Maker's representatives, affiliates, parents, subsidiaries, related entities, and/or such other entities in which Maker holds a controlling interest, together with their respective successors and assigns.

**THIS IS A BALLOON NOTE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $500,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY HOLDER UNDER THE TERMS OF THIS NOTE.**

Maker's Address:

9787 Glades Road
Boca Raton, FL 33434

**WORLD CLASS AUTO REPAIR CENTER, LLC**, a Florida limited liability company

By: _____
Name: Jeffrey A. Kranitz
Its:    Manager

Page 5 of 6

## SCHEDULE A

## (The Collateral)

In order to secure its obligations under the Note, Maker hereby grants to Holder a good and valid first priority and continuing security interest in and lien upon the following described property of Maker, which is located at 9787 Glades Road, Boca Raton, FL 33434, and/or any other address where Maker may thereafter be located  (the "Collateral''), up to the amount of the Note, whether any such property is now owned or hereafter acquired or existing, and all records (including computer software) pertaining to the following, and all substitutions for, all proceeds and all products of the following (including insurance proceeds):

a.      all inventory, goods (including returned or repossessed goods and all goods, the sale of which gives rise to accounts receivable, contract rights, chattel paper, general intangibles or instruments), merchandise and other personal property, in each case whether now owned or hereafter produced, acquired by Maker which are for sale or lease or are furnished or to be furnished under a contract of service, work in process or used in Maker's business;

b.      all non-trust related accounts, accounts receivable, contract rights, general intangibles, chattel paper and instruments (including without limitation instruments evidencing any obligation to Maker for payment for goods sold or leased or services rendered or otherwise), non-trust related deposit accounts, documents, rights to payment evidenced by chattel papers, documents or instruments, letters of credit, letter of credit rights, supporting obligations of Maker, and the rights to payment for money or funds advanced (excluding non-trust related advancements) or sold together with all payments thereon or thereunder, goodwill, licenses, permits and privileges, and rights of indemnification of Maker;

c.      all machinery, equipment, furniture and other tangible personal property and fixtures of Maker, together with all accessions, additions, accessories, parts and equipment now or hereafter affixed thereto or used in connection therewith;

d.      all Software, acquired or purchased by Maker and not developed by Maker.  For purposes of this Agreement, "Software" consists of all (i) computer programs and supporting information owned or licensed by Maker, and (ii) computer programs embedded in goods and any supporting information owned or licensed by Maker whether or not the program is associated with the goods in such a manner that it customarily is considered part of the goods, and whether or not, by becoming the owner of the goods, a person acquired a right to use the program in connection with the goods, and whether or not the program is embedded in goods that consist solely of the medium in which the program is embedded; and

e.      all of the issued, or to be issued, outstanding membership interest in Maker and all of the issued, or to be issued,  outstanding shares of stock in World Class Auto Repair Center, Inc., a Florida corporation, whether such membership interest or shares of stock are now owned or hereafter acquired or existing.

**EXHIBIT 4**

## PLEDGE AGREEMENT

THIS PLEDGE AGREEMENT (this "Pledge") is made effective April 21, 2020, by and between **JEFFREY A. KRANITZ** (the "Debtor"), and **CANES TWENTY TWO, LLC**, a Florida limited liability company (the "Secured Party"), collectively, the "parties."

### RECITALS

WHEREAS, the Debtor is the owner of One Hundred (100) Shares of WORLD CLASS AUTO REPAIR CENTER, INC., a Florida corporation (the "Corporation"); and

WHEREAS, the Debtor desires to pledge One Hundred (100) Shares in the Corporation (the "Shares") in connection with that certain Senior Secured Balloon Promissory Note given by the Corporation to the Secured Party in the original principal amount of Five Hundred Thousand Dollars ($500,000.00) (the "Note");

WHEREAS, the Secured Party has agreed to such loan conditioned upon the Debtor's Note being secured by the Shares;

WHEREAS, in consideration of the substantial performance by the Debtor, and to provide an efficient manner to facilitate the transfer of the Shares back to the Secured Party in the Event of Default (as such term is defined in the Note and this Pledge), the Secured Party and the Debtor desire to execute that certain Conditional Assignment of Shares to be executed contemporaneously with this Pledge (the "Conditional Assignment"); and

NOW, THEREFORE, in consideration of the premises and the mutual promises of the parties hereto and the mutual benefits to be gained by the performance thereof, the parties agree as follows:

### AGREEMENTS

1.  **Recitals Incorporated**.  The Recitals are incorporated and made part of this Pledge.

2.  **Debtor's Pledge of Shares**.  For value received, the Debtor hereby assigns and grants to the Secured Party, with full recourse to the Debtor, upon and subject to the terms and conditions set forth in this Pledge, a security Shares in and to the following described personal property (the "Collateral"):

    A.   the Shares in the Corporation;

    B.   all rights, powers, privileges and preferences pertaining or incidental to the Shares in the Corporation described in Section 2.A. above and any co- or parallel investment rights, rights to subscribe, distributions of cash or other property (including, without limitation, membership Shares and debt), liquidating distributions, allocations, new Securities (whether certificated or uncertificated) and any other property to which the Debtor may become entitled by reason of the

Debtor's ownership of the Shares or any Securities pledged and assigned hereunder or from time to time; and

C.      all proceeds of any of the property described in Sections 2.A. and 2.B. above.

3.      **The Obligations.**  The security Shares herein granted (the "Security Shares") shall secure full payment and performance of:  **(a)** the Note (such Note and any notes given in modification, renewal, extension or substitution thereof being herein sometimes collectively referred to and included in the term the "Note"); and **(b)** the due and punctual observance and performance of each and every agreement, covenant and condition to be observed or performed on the Debtor's part under this Pledge, the Guaranty, and the Note (which Note and all of which agreements, covenants and conditions under this Pledge and the Note are hereinafter referred to together as the "Obligations").

4.      **Priority.**  The Debtor represents and warrants that the Security Shares are first and prior security Shares in and to all of the Collateral, and there are no liens thereon or security Shares therein on the date hereof in existence prior to the Debtor's acquisition of the Collateral.

5.      **Conditional Assignment**.  Concurrent with the execution of this Pledge, the Debtor will deposit the Conditional Assignment with the Secured Party. Upon the occurrence of an Event of Default (as defined hereunder or under the Note), the Debtor agrees that the Secured Party may deliver the Conditional Assignment to the Corporation on its behalf.

6.      **Corporation's Receipt and Agreement**.  Upon presentment of the receipt of the Conditional Assignment to the Corporation, the Corporation agrees to consent to the acceptance of the Secured Party as a Shareholder of the Corporation.  The parties agree that the Shareholder and the Corporation shall be under no duty to determine if an Event of Default had occurred under the Note or this Pledge, and further, that the Debtor agrees to indemnify and hold the Corporation harmless for any acts in allowing the Secured Party to become a Shareholder of the Corporation if the Conditional Assignment is received by the Corporation.

7.      **Event of Default**.  Each of the following shall be deemed an "Event of Default" under this Pledge:

A.      nonpayment, nonperformance or non-observance of any of the covenants, agreements or conditions of this Pledge, the Note, the Guaranty, or any other document, agreement, instrument now or hereafter securing this Pledge and/or the Note (collectively, the "Security Instruments" or "Security Instrument") which nonpayment, nonperformance or non-observance shall have continued beyond the expiration of any applicable grace or notice period;

B.      the occurrence of any event or condition which would entitle the Secured Party or any other obligee to exercise any of its remedies under this Pledge;

C.      the non-receipt by the Secured Party of any required payment under the Note in accordance with the Note;

2

D.      a default under this Pledge, the Note, the Guaranty, or other Security Instrument;

E.      a default under any document, agreement or instrument evidencing any obligation or indebtedness secured in whole or in part by any or all of the property covered by any of the Security Instruments; or

F.      breach of, or the proving false or misleading in any material respect, of any representation or warranty now or hereafter made to the Secured Party by, on behalf of, or for the benefit of the Debtor, or contained in:

(i)     this Pledge;
(ii)    the Note;
(iii)   the Guaranty;
(iii)   any Security Instrument; or
(iv)    any statement, financial statement, certificate or other document, certificate, agreement or instrument furnished, signed or executed in connection herewith by, on behalf of, or for the benefit of Debtor.

8.      **Secured Party's Remedies Upon Event of Default**.  Upon an Event of Default, the Secured Party shall have all rights and remedies in and against the Shares and otherwise of a secured party under the Uniform Commercial Code of Florida and all other applicable laws and shall also have all the rights provided herein, all of which rights and remedies shall be cumulative to the fullest extent permitted by law (the "UCC").  In connection with the foregoing, the Secured Party shall have the right:

A.      to declare the Note immediately due and payable in full, with all accrued Shares thereon; and

B.      to inure to all of the rights, benefits and Shares of the Debtor with regard to the Shares.

9.      **Release of Pledge**.  Upon the satisfaction of all obligations of the Debtor to the Secured Party secured by this Pledge, the Secured Party shall return to the Debtor the Note, this Pledge and Security Instruments and shall endorse all instruments to the Debtor or the Debtor's order, and give an assignment of such documents in recordable form, if necessary.

10.     **Amendment**.  This Pledge may only be modified, amended or changed by a written instrument executed with the same formalities as this instrument.

3

11.    **Miscellaneous Provisions**.

    A.    <u>Applicable Law, Jurisdiction and Venue</u>.   This Pledge shall be governed by, construed and enforced in accordance with the laws of the State of Florida.  The venue of any action brought to construe this Pledge, specific performance of any contractual obligation or other cause of action directly related to this Pledge will be Florida, and any court therein having jurisdiction over the subject matter of the dispute or matter.   All parties hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

    B.    <u>Notices</u>.  All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been given when delivered by hand, five days following the date of deposit in the United States mail, by registered or certified mail, postage prepaid, return receipt requested, or on the delivery date shown on a written verification of delivery provided by a reputable private delivery service, if addressed to the last address provided to the sender by the addressee.

    C.    <u>Complete Agreement</u>.   This Pledge sets forth the entire agreement and understanding of the parties and supersedes all prior agreements, understandings, negotiations, and discussions, both written and oral, among such parties with respect to such subject matter.

    D.    <u>Benefit and Binding Effect</u>.   The terms and provisions of this Pledge shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, legal representatives, and assigns.

    E.    <u>No Third Party Beneficiary</u>.   Nothing expressed or implied in this Pledge is intended or shall be construed upon or give any person, firm, corporation, partnership, association or other entity, other than the parties hereto and their respective heirs, personal representatives, legal representatives and assigns, any rights or remedies under, or by reason of this Pledge.

    F.    <u>Severability</u>.   The invalidity of any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Pledge shall not affect the enforceability of the remaining portions of this Pledge or any part hereof, all of which are inserted conditionally on their being valid in law, and, in the event that any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Pledge shall be declared invalid, this Pledge shall be construed as if such invalid word, phrase, sentence, clause, section or subsection had not been inserted.

    G.    <u>Section Headings</u>.  The section and other headings contained in this Pledge are for reference purposes only and shall not affect the meaning or interpretation of any provision of this Pledge.

H.   <u>Pronouns and Plurals</u>.  Whenever used in this Pledge and the context so requires, any pronoun shall include the corresponding masculine, feminine or neuter forms, and the singular form shall include the plural and vice versa.

I.   <u>Attorneys' Fees</u>.  If any party shall retain or engage an attorney or attorneys to collect, enforce, or protect such party's Shares with respect to this Pledge, the prevailing party shall be entitled to receive payment of all costs and expenses of collection, enforcement or protection, including reasonable attorneys' fees, whether or not suit is brought and through all appeals.

J.   <u>Counterparts</u>.  This Pledge may be executed in two (2) or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Pledge by facsimile or pdf file shall be effective as delivery of an original executed counterpart of this Pledge.  This Pledge may be executed by facsimile or electronic signature and any such facsimile or electronic signature shall be deemed to be of the same force and effect as a manually signed original.

K.   <u>Definitions</u>.  As used in this Pledge, the term "Securities" means any notes, stocks, treasury stocks, bonds, debentures, evidences of indebtedness, warrants, partnership or corporation Shares, stock options, Shares in limited liability companies, beneficial Shares in trusts or equity Shares of any nature whatsoever in any legal entity or, in general, any Shares or instrument commonly known as a "security", or any warrant or right to subscribe to or purchase any of the foregoing; and the term "Issuer" means, with respect to any Securities, the legal entity in which such Securities evidence an ownership or beneficial Shares.  All capitalized terms used but not otherwise defined in this Agreement shall have the respective meanings given them in the UCC (as defined in Section 8 above).

IN WITNESS WHEREOF, the parties hereto have executed this Pledge effective the date first above written.

DEBTOR:

_____
JEFFREY A. KRANITZ

SECURED PARTY:

CANES TWENTY TWO, LLC, a Florida limited liability company, By Canes Nineteen, LLC, a FL LLC, its Manager

By:   _____
Name:   ADAM BIEGUT
Its:   MANAGER

5

**EXHIBIT 5**

## SIDE LETTER AGREEMENT

THIS SIDE LETTER AGREEMENT ("Side Letter") is entered into as of the 21st day of April, 2020, by and between **CANES TWENTY TWO, LLC**, a Florida limited liability company, and/or any related entities, subsidiaries, and/or affiliates ("Canes"), **JEFFREY A. KRANITZ** ("Jeff"), and **WORLD CLASS AUTO REPAIR CENTER, INC.,** a Florida Corporation, and/or any related entities, subsidiaries, and/or affiliates ("WCARC") (collectively Canes, Jeff, and WCARC shall be referred to as the "parties").

## RECITALS

WHEREAS, Canes and WCARC have entered into that certain Senior Secured Balloon Promissory Note in the original principal amount of Five Hundred Thousand Dollars ($500,000.00) effective as of November 19, 2019 (the "Note");

WHEREAS, Canes and Jeff have entered into that certain Pledge Agreement (the "Pledge") and Conditional Assignment of Shares (the "Conditional Assignment") relating to Jeff's pledge of One Hundred (100) Shares in WCARC to secure the Note effective as of even date hereof;

WHEREAS, the parties have made certain agreements and concessions relating to the forgiveness of the Note, and contemporaneous termination of the Pledge and the Conditional Assignment upon the occurrence of a certain event; and

WHEREAS, the parties hereto desire to make certain agreements and covenants related to the Note, the Pledge, and the Conditional Assignment and the transactions contemplated thereby in accordance with the terms and conditions of this Side Letter.

NOW, THEREFORE, in consideration of the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      Recitals. The recitals above are true and correct and are incorporated herein in their entirety.

2.      Forgiveness of the Note. In the event of the death of Elliot S. Smerling, so long as such death is not from the foul play, violence, or the like, of Jeff, or anyone acting on Jeff's behalf, directly or indirectly (the "Death"), Canes hereby agrees to forgive the remaining balance of principal and interest due under the Note and the Note shall be deemed satisfied, cancelled, voided and of no further force or effect.  Further, upon the Death, Canes agrees to terminate any and all UCC Financing Statements filed as security for the Note and such UCC Financing Statements shall be deemed satisfied, cancelled, voided and of no further force or effect.

3.       Termination of the Pledge and the Conditional Assignment.  Contemporaneously upon the Death, the Pledge and the Conditional Assignment shall be hereby satisfied, terminated, voided

1

and of no further force or effect. Additionally, upon the Death, Canes agrees to terminate any and all UCC Financing Statements filed as security for the Pledge and such UCC Financing Statements shall be deemed satisfied, cancelled, voided and of no further force or effect.

4.     <u>Intent and Beneficiary</u>. The parties agree that it is the intent of this Side Letter that the ultimate beneficiary of any of the Shares of WCARC shall be Jeff and the loan given by WCARC to Canes under the Note shall be ultimately forgiven upon the Death.

5.     <u>Miscellaneous Provisions</u>.

   5.1.   <u>Applicable Law, Jurisdiction and Venue</u>. This Side Letter shall be governed by, construed and enforced in accordance with the laws of the State of Florida. The venue of any action brought to construe this Side Letter, specific performance of any contractual obligation or other cause of action directly related to this Side Letter will be Florida, and any court therein having jurisdiction over the subject matter of the dispute or matter. All parties hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

   5.2.   <u>Complete Agreement</u>. This Side Letter sets forth the entire agreement and understanding of the parties and supersedes all prior agreements, understandings, negotiations, and discussions, both written and oral, among such parties with respect to such subject matter.

   5.3.   <u>Benefit and Binding Effect</u>. The terms and provisions of this Side Letter shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, legal representatives, and assigns.

   5.4.   <u>Severability</u>. The invalidity of any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Side Letter shall not affect the enforceability of the remaining portions of this Side Letter or any part hereof, all of which are inserted conditionally on their being valid in law, and, in the event that any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Side Letter shall be declared invalid, this Side Letter shall be construed as if such invalid word, phrase, sentence, clause, section or subsection had not been inserted.

   5.5.   <u>Section Headings</u>. The section and other headings contained in this Side Letter are for reference purposes only and shall not affect the meaning or interpretation of any provision of this Side Letter.

   5.6.   <u>Pronouns and Plurals</u>. Whenever used in this Side Letter and the context so requires, any pronoun shall include the corresponding masculine, feminine or neuter forms, and the singular form shall include the plural and vice versa.

   5.7.   <u>Attorneys' Fees</u>. If any party shall retain or engage an attorney or attorneys to collect, enforce, or protect such party's rights with respect to this Side Letter, the prevailing party shall be entitled to receive payment of all costs and expenses of collection,

enforcement or protection, including reasonable attorneys' fees, whether or not suit is brought and through all appeals.

5.8.   Counterparts.  This Side Letter may be executed in two (2) or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.  Delivery of an executed counterpart of a signature page to this Side Letter by facsimile or pdf file shall be effective as delivery of an original executed counterpart of this Side Letter.  This Side Letter may be executed by facsimile or electronic signature and any such facsimile or electronic signature shall be deemed to be of the same force and effect as a manually signed original.

5.9   Defined Terms. Capitalized terms used in this Side Letter and not otherwise defined shall have the meanings ascribed to such terms in the Note, the Pledge, or the Conditional Assignment.

IN WITNESS WHEREOF, the undersigned have executed this Side Letter effective the date first above written.

**CANES TWENTY TWO, LLC**, a Florida limited liability company , By Canes Nineteen, LLL, a FLLLC, its Manager

By:  _____
Name:  ADAM BLEUGI
Its:  MANAGER

_____
**JEFFREY A. KRANITZ**

**WORLD CLASS AUTO REPAIR CENTER, INC.**, a Florida Corporation

By:  _____
Jeffrey A. Kranitz
Its:  President

3